[No. 9137.   Department One.   April 19, 1911.]

CHARLES F. KREYMBORG, *Respondent*, v. HORTON THURSTON
*et al., Appellants.*[1]

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR
JURY. The contributory negligence or recklessness of a green
hand in a shingle mill is for the jury, where he stepped into a con-
veyor to tramp down waste, as he had seen his instructor do a few
hours before, and was thrown down upon a saw by reason of lugs
in the bottom of the conveyor of which he had no notice, under
circumstances raising a strong inference that he was expected to
attend to the conveyor, although not directed in words to do so.

MASTER AND SERVANT—TRIAL—VERDICT—SPECIAL FINDINGS—CON-
TRIBUTORY NEGLIGENCE. In an action for personal injuries, a special
verdict finding that plaintiff's act of stepping into a conveyor near
a cut-off saw was very dangerous from the fact that the cut-off saw
was not properly guarded, and that the method employed was safe
provided the cut-off saw had been properly guarded, does not show
contributory negligence and is not inconsistent with a general ver-
dict for the plaintiff, in the absence of any finding that the danger
was known to the plaintiff or so obvious and apparent that a person
of ordinary prudence would not have attempted the act.

MASTER AND SERVANT—FACTORY ACT—EFFECT—VIOLATION—NEGLI-
GENCE. The purpose and effect of the factory act requiring reason-
ably safe guards for all machinery in a mill which it is practicable
to guard, is to make it negligence, as a matter of law, to fail to
comply with the requirements of the statute.

Appeal from a judgment of the superior court for What-
com county, Hardin, J., entered April 29, 1910, upon the
verdict of a jury rendered in favor of the plaintiff, in an
action for personal injuries sustained by an employee in a
shingle mill through contact with a cut-off saw.   Affirmed.

*Newman & Howard (Hurlbut & Neal,* of counsel), for ap-
pellants.

*Romaine & Abrams,* for respondent.

PER CURIAM.—On September 29, 1909, the respondent,
while in the employment of the appellants, working in a

[1]Reported in 115 Pac. 77.

shingle mill owned and operated by them, lost his left hand by bringing his arm in contact with a cut-off saw installed in the mill as a part of its operative machinery. This action was brought to recover for the injury suffered. In his complaint the respondent set forth separately two causes of action, the one based on a charge of liability under the state factory act, and the other on the common law liability of the appellants. Issue was taken on the allegations of the complaint, and on the trial, at the conclusion of the respondent's case in chief, the appellants moved for a nonsuit as to both causes of action. The motion was sustained as to the cause of action founded on the common law liability, but was denied as to the cause of action founded on the state factory act. At the conclusion of the entire case, the appellants moved for a directed verdict. This motion was denied and the cause submitted to the jury, who returned a verdict for the respondent in the sum of $4,000. From the judgment entered on the verdict, this appeal was taken.

The evidence on the part of the respondent tended to show that he was not a regular employee of the mill; that, for some time prior to the day of the accident he had been working for the appellants in the timber getting out shingle bolts; and that on the morning of the accident the weather was stormy, and it had been decided that the timbermen should not be sent into the woods on that day. After this decision had been reached, the respondent went down to the mill, thinking he might find a boat in which he could row himself across the bay lying between the mill and the city of Blaine. As he reached the mill, one of his employers met him, told him that the mill crew was short-handed on that day, and asked him if he would not help them out; that he consented, and was told to go into the mill to a man named Wilder, who would tell him what to do; that he found Wilder in that part of the mill where shingle blocks were sawed and trimmed. It seems there was in use in this part of the mill two different machines for sawing the blocks, the one a circular cut-off saw, some 48

inches in diameter, and a drag saw operated after the manner of a crosscut saw. The cut-off saw was used to cut blocks from the timber which came to the mill in the form of bolts, while the drag saw was used to cut them from timber which came into the mill in the form of logs. Directly back of the cut-off saw was the knee-bolter saw, used to trim the shingle blocks and put them into shape for the shingle saws. Running from underneath the knee-bolter saw towards and past the cut-off saw and on out to a burner some distance from the mill, was an open chain conveyor, used to carry off the waste and refuse left from the operation of sawing and trimming the shingle blocks. The conveyor was 18 inches wide at the bottom, 30 inches wide at the top, and of a depth of 16 inches. Lying between the saws was a place called the deck, on which the blocks cut from logs were split into suitable sizes for handling by the knee-bolter.

When the respondent entered the mill after the meeting with his employer, the mill crew had just finished cutting blocks with the cut-off saw, and a log had been drawn into the chute where the drag saw was operated. The respondent was told to assist in getting the log into a position where the saw could be used upon it. This he did, when he was told to take the blocks as they were cut from the log, split them into convenient sizes for the knee-bolter to handle, and place the split pieces within the knee-bolter's reach. After working at this for a while, he discovered that refuse from the logs had accumulated on the deck in such a quantity that it materially interfered with his work. To get it out of the way he started to scuff it off into the conveyor with his feet, when Wilder, the knee-bolter, pointed to a scoop shovel standing in a corner of the mill, and by motions indicated that he could use it for the purpose of cleaning the deck. The respondent thereupon got the shovel and shoveled the waste into the conveyor. This caused the conveyor to clog, whereupon Wilder left the knee-bolter pit, came over and removed the clog by getting into the conveyor and stamping and scuffing the

waste with his feet. As the work progressed the respondent found it necessary from time to time to again clear the deck by shoveling the waste into the conveyor. As he did so he discovered that the conveyor had again clogged at a place a short distance from the cut-off saw. This saw had been left in motion during the time the respondent had been in the mill, although apparently without necessity. To remove the clog, he went over and got into the conveyor with his feet, as he had seen his instructor do on the previous occasion. The conveyor chain had fastened onto it, at distances approximately 12 feet apart, lugs four inches high, a fact the respondent was not aware of. As he stood in the conveyor one of these lugs caught his feet, dragged them from under him, and caused him to fall backward towards the revolving cut-off saw. In the fall his arm came into contact with the saw, causing the injury for which he sues.

The appellants' first and principal contention is that the facts do not justify a recovery. They argue that the respondent acted without instructions when he got into the conveyor with his feet to remove the accumulated debris, and further that the act was one so hazardous in its nature that it was not to be supposed that an ordinarily prudent person would undertake it. But these were questions for the jury. While the respondent was not directed in words to keep the conveyor clean, the inference that he was expected to do so seems to us to scarcely admit of a doubt about the matter. At any rate, the inference is sufficiently strong to make the question one for the jury, and we are bound by the verdict. So with the contention that the act itself was so reckless as to forbid a recovery. While it looks foolhardy, in the light of what happened, it cannot be said that no ordinarily prudent person would have undertaken it, having only such knowledge of the danger of the act as the respondent possessed. He did not know there were lugs on the conveyor chain to drag him down, and his instructor had performed the same act with safety but a few hours before.

Certain special interrogatories were submitted to, and answered by, the jury, among which were the following:

"Was the act of the plaintiff in stepping into the conveyor near to the cut-off saw and attempting to loosen refuse with his feet a very dangerous act? (Answer)—Yes, from the fact that the cut-off saw was not properly guarded. (Interrogatory No. 12)—Was the method employed in getting into the conveyor and attempting to loosen refuse with his feet a safe method? (Answer)—Yes, provided cut-off saw had been properly guarded."

It is argued that the answers to these interrogatories are contrary to the general verdict, because the jury found the act of the respondent in stepping into the conveyor "a very dangerous act"; in other words, it is contended that the jury by these findings found the respondent guilty of contributory negligence, which is contrary to the general verdict which found the appellants liable to answer for the injury. But we think the appellants place a wrong construction on the special verdict. The fact that the act performed by the respondent may have been dangerous does not of itself convict him of contributory negligence. Before he can be so convicted, he must have known of the danger, or the danger must have been so apparent and obvious that a person of ordinary prudence would not have attempted the act. The special findings made by the jury do not cover these questions.

The court gave to the jury the following instruction:

"You are instructed that the law of this state in force at the time of the injury to the plaintiff alleged in this case, and known as the 'Factory Act,' provides that any person, firm or corporation operating a mill where machinery is used, shall provide and maintain in use reasonable safe guards for all saws which it is practicable to guard, and which can be effectively guarded with due regard to the ordinary use of such machinery and the danger to employees therefrom and with which employees of any such mill are liable to come in contact with while in the performance of their duties. You are instructed that if you find that the cut-off saw complained of in this case, and upon which it is alleged the plaintiff was in-

jured, was unguarded and unprotected, and that it was practicable to guard the same effectively, having due regard for the use of the same, then under the law it would be your duty to find the defendants negligent in that regard; but if you find from the evidence that the cut-off saw on which plaintiff was injured was as well and as practicably guarded as was consistent with its ordinary use, and that any further or additional guards would have impaired its use or rendered its use more dangerous, the defendants would not be guilty of negligence under the law."

It is contended that the court erred in giving this instruction, since it assumed therein, as a matter of law, that failure on the part of the appellants to guard the saw on which the respondent was injured, if it was practicable to guard the same, was negligence; contending that the question whether or not it was negligence to fail to guard the saw was for the jury and not for the court. But we think the court correctly defined the purpose of the factory act. We think it was intended by the act to make it negligence, as a matter of law, for operators of machinery, around which their employees are compelled to work, to fail to guard such machinery when it is practicable so to do. This being the purpose of the act, it was not error for the court to so charge the jury.

We find no error in the record, and the judgment will stand affirmed.